UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | No. 5:11-CR-73-KKC-HAI-1 |
| | ) | |
| v. | ) | RECOMMENDED DISPOSITION |
| | ) | & ORDER |
| MARQUIS DERON HEARD, | ) | |
| | ) | |
| Defendant/Movant. | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Marquis Deron Heard represented himself at his criminal trial and was convicted of (1) conspiracy to distribute five kilograms or more of cocaine; (2) cocaine distribution; (3) possession with intent to distribute 28 grams or more of cocaine base; (4) being a felon in possession of a firearm; (5) conspiracy to commit money laundering; and (6) 28 counts of money laundering. D.E. 218. He was sentenced to a total term of 360 months. *Id.* at 3.

One June 2, 2016, Heard filed a timely motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.[1] D.E. 273. The motion was accompanied by a 77-page memorandum. D.E. 273-1. On July 7, 2016, the government responded to the motion. D.E. 280. Heard replied to the government's response. D.E. 287. But he also moved under Rule 5 for the Court to order the government to respond to all his claims. D.E. 286. The undersigned agreed with Heard that the government had not addressed all the claims in his § 2255 petition, and ordered the government to supplement its response. D.E. 289. The government filed a supplemental

---

[1] The motion was docketed on June 9, 2016.

response (D.E. 296), and Heard replied (D.E. 300).  The undersigned denied an additional Rule 5 motion by Heard.  D.E. 299.

Heard's memorandum includes five grounds of alleged constitutional violations, but some grounds include more than one claim.  Heard alleges that:

(1)    The District Judges committed legal errors in ruling that Heard could represent himself at trial.

(2)    Heard's counsel rendered ineffective assistance at his competency hearing.

(3)    Heard was denied his statutory and constitutional rights to counsel at his competency hearing.

(4A)    Heard's appellate counsel was ineffective for failing to challenge the sufficiency of the evidence at trial.

(4B)    Heard's trial and appellate counsel were ineffective for failing to challenge his indictment as lacking in probable cause and based on misconduct before the grand jury.

(5)    Heard's trial and appellate counsel were ineffective for failing to challenge the admissibility of evidence seized pursuant to search warrants.

D.E. 273-1.  Heard requested an evidentiary hearing.  *Id.* at 35, 62.

After the § 2255 motion was fully briefed, the undersigned determined that an evidentiary hearing was warranted on Ground Three, which alleges that Heard was denied his statutory and constitutional rights to counsel at his competency hearing.  D.E. 301.  Heard filed an objection to this order, apparently misconstruing it as a recommended disposition.  D.E. 302.  Chief Judge Caldwell overruled the objection.  D.E. 303.  The undersigned then appointed Brandon Storm to represent Heard for the limited purpose of representing Heard at the evidentiary hearing.  D.E.

305, 306.  Almost immediately, Heard filed a letter asking to "fire" Mr. Storm.  D.E. 308.  Mr. Storm accordingly filed a motion for a hearing on Heard's apparent dissatisfaction with counsel.  D.E. 309.

During a telephone conference on April 5, 2017, the undersigned ordered Mr. Storm to file a status report after a planned meeting with Heard.  D.E. 310.  The undersigned also granted the government permission to file a motion to reconsider the order granting an evidentiary hearing.  *Id*.  Heard filed a letter attempting to waive the evidentiary hearing; its contents suggested he preferred a hearing before Judge Caldwell.  D.E. 311.  The government filed a motion for reconsideration, asking the Court to cancel the hearing on the ground that Ground Three was plainly meritless and no factual development was needed.  D.E. 312.  Heard also sought to cancel the hearing through a motion he styled one to dismiss the government's motion for reconsideration (D.E. 317) and a letter to the Court (D.E. 318).  Mr. Storm filed his status report, which informed the Court that Heard had refused to meet with him.  D.E. 319.  Heard then filed a letter which asked that the previous letter "be regarded as an affidavit of bias," apparently in an attempt to have the undersigned removed from the case.  D.E. 320.

On May 19, 2017, the undersigned issued an order clarifying for Mr. Heard that it was necessary to conduct the hearing, that it was necessary that he be represented by counsel, and that the hearing would be before the undersigned in accordance with this District's practice of referring § 2255 motions to Magistrate Judges.  D.E. 321.  Mr. Storm then filed a memorandum in response to the government's motion for reconsideration.  D.E. 322.  The government replied (D.E. 324), and its motion for reconsideration was denied (D.E. 325).

The evidentiary hearing was held on July 28, 2017, in London.  D.E. 330; D.E. 331 (transcript).  The undersigned found that no follow-up briefing was necessary, and relieved Mr. Storm of further duties in the case.  *Id*.  Thus, Heard's § 2255 motion is ripe for review.

## I. Background

Heard was originally indicted in June 2011, and he appeared at his arraignment with retained counsel William Butler.  D.E. 1, 10.  Shortly thereafter, the government obtained and executed a search warrant for Heard's residence, two storage units, his mother's residence, and two vehicles.  *See* D.E. 229 at 20-21.  The indictment was soon superseded (D.E. 13), and in August 2011, Mr. Butler moved to withdraw as counsel (D.E. 26).  Mr. Butler stated in his motion that "a conflict" had arisen between himself and Heard.  *Id*.  At about the same time, Heard sent a letter to Magistrate Judge Wier complaining that Mr. Butler refused to file motions as Heard directed.  D.E. 29.  District Judge Coffman granted Mr. Butler's motion to withdraw.  D.E. 32.  Because Heard initially refused to complete a financial affidavit, he was ordered to retain new counsel.  D.E. 33.  Thereafter, Heard filed a series of motions *pro se*.  D.E. 36, 39, 40, 42, 45, 46, 47, 48, 50.

In November 2011, the Grand Jury issued a second superseding indictment.  D.E. 57.  At the arraignment, the Court appointed Andrew Stephens to represent Heard under the Criminal Justice Act and denied without prejudice Heard's pending *pro se* motions.  D.E. 62, 66, 67.  Even though he was represented by counsel, Heard filed another *pro se* motion.  D.E. 68.  He also sent the Court a copy of a letter to Mr. Stephens demanding that Mr. Stephens file a motion identical "word for word" to his *pro se* motion.  D.E. 72.  Heard further sent the Court a notice that he had instructed Mr. Stephens to file a request for a bill of particulars within three days.

4

D.E. 73.  Shortly thereafter, Heard wrote the Court to complain that Mr. Stephens had not done as instructed and should withdraw.  D.E. 74.

On November 23, 2011, Mr. Stephens moved to withdraw.  D.E. 78.  According to the motion, Mr. Stephens's refusal to "file superfluous and unnecessary motions" generated "hostility" from Heard that included being "verbally abusive" on the telephone and threatening to assault Mr. Stephens if he appeared at the jail.  *Id.*  The Court scheduled a hearing on Mr. Stephens's motion to withdraw.  D.E. 89.  Heard continued to file motions, which were denied. D.E. 93.  Mr. Stephens's motion to withdraw was also denied on December 12, 2011.  *Id.*

On December 27, 2011, Mr. Stephens filed a motion to assess Heard's mental competency.  D.E. 97.  Mr. Stephens noted that Heard's attitude had "changed remarkably" from his formerly cooperative disposition.  *Id.* at 3.  He described a recent situation in which Heard had acted bizarrely and had refused to communicate productively.  *Id.* at 3-4.  The government did not object to the request for a mental evaluation (D.E. 101, 103), and the Court ordered that it be initiated (D.E. 104).  Heard was evaluated at the Federal Medical Center in Lexington, Kentucky.  On March 21, 2012, Dr. Judith Campbell completed Heard's evaluation report, which was filed in the record on April 11, 2012.  D.E. 124.  The report diagnosed Heard as having an unspecified personality disorder with antisocial, paranoid, and narcissistic features.  *Id.* at 9.  But the evaluator found that Heard was competent to stand trial.  *Id.* at 11.

Judge Coffman held a pretrial hearing concerning the competency evaluation on May 1, 2012.  D.E. 127; D.E. 240 (transcript).  At the hearing, Heard stipulated to the report's conclusions and "repeatedly expressed his desire to proceed pro se."  D.E. 129.  Judge Coffman allowed Heard to proceed *pro se* with Mr. Stephens as his legal advisor.  *Id.*  In December 2012, the case was transferred from Judge Coffman to Judge Caldwell.  D.E. 175.  At the pretrial

conference on January 7, 2013, Chief Judge Caldwell found "sufficient evidence in the record to support" Judge Coffman's finding that Heard was competent to stand trial and that his waiver of the right to counsel was knowing and voluntary.  D.E. 184.  Heard then represented himself at trial and was convicted.  Judgment was entered May 6, 2013.  D.E. 218.

Heard appealed, and the Court of Appeals appointed appellate counsel.  D.E. 223.  Heard argued that (1) the District Court improperly failed to conduct a competency hearing; (2) his waiver of his right to counsel was not knowing and voluntary; and (3) he was not competent to represent himself.  *United States v. Heard*, 762 F.3d 538, 539 (6th Cir. 2014); D.E. 287 at 2-3.[2] The appellate court found that, although Heard was diagnosed with a personality disorder, this disorder did not render him incompetent to stand trial, and he "otherwise lack[ed] any basis to show that the district court had reason to doubt his competency."  *Id*. at 542.  The appellate court also found, under the *de novo* standard of review, that "Heard's waiver of his right to counsel was both knowingly and intelligently made" and "knowing and intelligent."  *Id*. at 542-43.  The Court found that Judge Coffman's inquiry on self-representation substantially complied with the *Bench Book*, and affirmed.  *Id*. at 543.

## II.  Legal Standards

Under 28 U.S.C. § 2255, a federal prisoner may seek habeas relief because his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the sentence exceeds the maximum authorized by law.  28 U.S.C. § 2255.  To prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings."  *Watson v. United States*,

---

[2] Heard's appellate brief framed the issues as: "Whether Heard was competent to stand trial" and "Whether Heard knowingly and intelligently waived his right to counsel and to proceed without counsel."  *United States v. Heard* (appellate brief), 2013 WL 5593253, at 2.

165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  A § 2255 movant bears the burden of proving his or her allegations by a preponderance of the evidence.  *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

The Court recognizes that Heard's motion and reply were filed *pro se*, without the assistance of an attorney.  The Court construes *pro se* motions more leniently than other motions. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381-83 (2003).

To successfully assert an ineffective-assistance-of-counsel claim, a defendant must prove both deficient performance and prejudice.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).  To prove deficient performance, a defendant must show "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Strickland*, 466 U.S. at 688.  But "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotations omitted).

In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.  When evaluating prejudice, courts generally must consider the "totality of the evidence." *Strickland*, 466 U.S. at 695.  Courts may approach the

*Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697.

### III.  Ground One

Heard's first ground centers on the District Judges' decision to allow him to represent himself at trial.  D.E. 273-1 at 10-48.  The government argues that because this claim is similar to what he raised on appeal, he is procedurally barred from raising it in a § 2255 motion.  D.E. 280 at 3.  Absent an exceptional circumstance, such as an intervening change in the law, petitioners may not use a § 2255 motion to relegate an issue that was raised on appeal.  *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996).

In 2014, the Sixth Circuit denied Heard's claims that (1) the District Court improperly failed to conduct a competency hearing; (2) Heard's waiver of his right to counsel was not knowing and voluntary; and (3) Heard was not competent to represent himself.  *United States v. Heard*, 762 F.3d 538, 539 (6th Cir. 2014); D.E. 256.  The current motion alleges similar legal errors, namely that the District Judges (1) were unaware they had discretion to deny his motion to represent himself, and (2) mistakenly applied the *Dusky* competency standard to the issue of whether Heard was competent to represent himself.  D.E. 273-1 at 10-35.

Heard leans heavily on *Indiana v. Edwards*, 554 U.S. 164 (2008), in which the Supreme Court found that a state was authorized to deny a defendant's request to represent himself, even though the defendant was competent to stand trial, if the court found he was insufficiently competent to conduct the harder work of representing himself.  The Supreme Court held that the state court's decision to require representation did not violate the schizophrenic defendant's constitutional right to self-representation.  *Id.* at 167.  Thus, under *Edwards*, even if a defendant

is competent to stand trial under the *Dusky* standard, a court may nevertheless find that he lacks the mental capacity to do a more complicated thing—act as his own attorney. *Id*. at 174, 178.

Heard argues that the Court erred by letting him represent himself despite the fact that he was competent to stand trial under *Dusky*. D.E. 273-1 at 10, 32. He suggests the District Judges and Mr. Stephens were "oblivious of the applicable law and . . . unaware of *Edwards*." *Id*. at 32; *accord* D.E. 300 at 7.

Heard's attempt to frame his question in a way that circumvents the procedural bar fails. His Ground One is not sufficiently distinct from what he argued on appeal to survive the second-bite-at-the-apple rule. One of the questions before the Court of Appeals was Heard's argument that he "was not competent to represent himself," and he specifically relied upon *Edwards*. *United States v. Heard*, 762 F.3d 538, 543 (6th Cir. 2014). This is essentially the same question as Heard's current Ground One. The Court of Appeals found *Edwards* distinguishable from Heard's case because the defendant in *Edwards* was psychotic. *Id*. The Court of Appeals analyzed Heard's competency report and held that Heard "lacks any basis to show that the district court had reason to doubt his competency." *Id*. at 542. The Court of Appeals also held that "Heard's waiver of his right to counsel was both knowingly and intelligently made." *Id*. at 543. In light of these findings, the appellate court "defer[red] to the district court's determination" that Heard did not suffer from the type of mental illness that rendered him incompetent to conduct his own trial. *Id*. (citing *Edwards*, 554 U.S. at 178).

Thus, citing specifically to *Edwards*, the Court of Appeals affirmed the decision that Heard was competent not only to stand trial, but *to represent himself. Heard*, 762 F.3d at 543. Heard now asks the Court to revisit his competency to conduct his own trial. This the Court cannot do. As established in *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999), and

*DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996), a claim raised on appeal cannot be relitigated in a § 2255 petition absent an intervening change in law, which Heard does not allege. Ground One is procedurally barred.

Heard includes another argument within Ground One, namely that he was deprived of a fair trial because Judge Caldwell "failed to revisit the competency issue prior to trial." D.E. 273-1 at 36. Heard acknowledges that Judge Caldwell and Heard's standby counsel had a brief discussion regarding his competency at the pretrial conference on January 7, 2013. *Id*. But he argues that, in light of his own "tirades," Judge Caldwell "should have stepped in and put an end to [Heard]'s self-representation." *Id*. at 42.

This sub-claim also goes to the merits of Heard's competency to represent himself. Again, because the Court of Appeals has held that Heard's waiver was knowing and voluntary and that the *Faretta* hearing was properly conducted, this sub-claim is procedurally barred.

### IV. Grounds Two and Three

Heard's second and third grounds can be discussed together. Heard's second ground is that his appointed counsel rendered ineffective assistance at his competency hearing. D.E. 273-1 at 49. His third ground is related: he argues that he was denied his statutory and constitutional rights to representation at his competency hearing. *Id*. at 56.

Section 4247 of Title 18 governs competency hearings in criminal matters, and its language is mandatory: "At a hearing ordered pursuant to this chapter the person whose mental condition is the subject of the hearing *shall be represented by counsel*[.]" 18 U.S.C.A. § 4247(d) (emphasis added). This statute creates "a non-waivable right to counsel during competency proceedings." *United States v. Kowalczyk*, 805 F.3d 847, 861 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 1230 (2016)). Lack of counsel during competency proceedings requires automatic reversal

10

without a showing of prejudice. *United States v. Ross*, 703 F.3d 856, 873-74 (6th Cir. 2012). The Sixth Circuit has explained that "a defendant cannot represent himself at his own competency hearing, the purpose of which is to determine whether a defendant understands and can participate in the proceedings in the first place." *Id*. at 869. Thus, a trial court must appoint counsel "'—whether defendant has attempted to waive it or not—and counsel must serve until the resolution of the competency issue.'" *Id*. (quoting *United States v. Purnett*, 910 F.2d 51, 56 (2d Cir. 1990)).

Heard did not raise this claim on appeal. His appellate brief makes no reference to section 4247 or the corresponding non-waivable constitutional right to counsel at a competency hearing. *United States v. Heard* (appellate brief), 2013 WL 5593253. Nevertheless, Circuit Judge White noted the issue in a concurring opinion. Judge White stated:

> I note also that Heard should have been represented by counsel at the competency hearing. *United States v. Ross*, 703 F.3d 856, 874 (6th Cir. 2012); 18 U.S.C. § 4247(d). However, the record shows that standby counsel provided adequate representation and was familiar with the competency report and Heard's ability to understand and cooperate.

*United States v. Heard*, 762 F.3d 538, 544 (6th Cir. 2014) (White, J., concurring). Unlike the majority opinion, Judge White's opinion is not binding on this Court. *See Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 394 n.6 (6th Cir. 2016). So Judge White's analysis does not control, and her concurrence does not prevent Heard from raising this issue in his § 2255 motion.

Although § 4247 establishes a right to counsel at the "hearing," the Sixth Circuit has construed the right more broadly. As the Court in *United States v. Martin*, 608 F. App'x 340 (6th Cir. 2015), recently summarized: "When a criminal defendant's competency to stand trial has been challenged, the validity of the defendant's waiver of counsel is suspended until the issue of his or her competency is resolved." *Id*. at 343. The Court in *Ross* held that the trial

court committed error when, "upon granting a competency hearing, it failed to reappoint full-time counsel to represent Ross until the issue of competency was resolved." *Ross*, 703 F.3d at 866. The Court explained that "determination of the need for a [competency] hearing . . . should have triggered appointment of counsel at least until the competency to stand trial issue was resolved." *Id*. at 869. "[A] defendant may not be permitted to waive counsel while the issue of competency is pending." *Id*. "Such a defendant may not proceed *pro se* until the question of her competency to stand trial has been resolved." *Id*. at 870.

This observation is significant because the record indicates that then-Chief Judge Coffman never conducted a competency "hearing" under § 4247. That section contemplates an evidentiary hearing during which the defendant "shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing." 18 USC § 4247(d).

Before Heard waived his right to counsel and stipulated to the findings of the psychological report, he was instructed to decide whether he wanted "a hearing on competency" or whether he would "stipulate" that he was competent. D.E. 240 at 10. Heard subsequently waived his right to a competency hearing. *Id*. at 25. The Court of Appeals majority likewise noted that the court did not "conduct a competency hearing" in this case. *Heard*, 762 F.3d at 541. Judge White, however, described the May 1, 2012 proceeding as a "competency hearing." *Id*. at 544 (White, J., concurring).

Because there was no evidentiary hearing as contemplated by § 4247, it is not clear whether the statutory right attached. But the case law establishes a broader non-waivable right to counsel that Heard contends was violated.

The fact that Heard did not raise Ground Three on appeal would normally mean that it was procedurally defaulted. A court can usually hear a defaulted claim only if the defendant establishes (1) cause and prejudice for the default or (2) actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). However, lack of counsel during competency proceedings is most likely a structural error—the type of error that requires automatic reversal without any inquiry into prejudice.[3]

The Sixth Circuit appears to hold that a structural error survives a procedural default created by failure to raise an issue on appeal. In *Johnson v. Sherry*, 586 F.3d 439 (6th Cir. 2009), the Court remanded the case for a hearing on a procedurally defaulted claim of the denial of the right to a public trial. *Id*. at 447-48. Although the Supreme Court recently held in *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017), that denial of the right to a public trial does not warrant automatic reversal, this holding would not affect the *Johnson* Court's stance on procedural default. Similarly, the Court in *Quintero v. Bell*, 256 F.3d 409, 413-15 (6th Cir. 2001), affirmed a conditional writ of habeas corpus on a claim of a biased jury. *Id*. at 413-16 ("[S]ince the structural nature of the tainted jury error warrants a presumption of prejudice that is exempt from harmless error analysis, sufficient cause and prejudice existed for the district court to reach the merits of Quintero's procedurally defaulted Sixth Amendment claim."), *judgment vacated*, 535 U.S. 1109 (2002), *judgment reinstated*, 368 F.3d 892, 893 (6th Cir. 2004); *see also*

---

[3] The rule is "established" that "complete deprivation of counsel during a critical stage warrants automatic reversal without consideration of prejudice." *United States v. Ross*, 703 F.3d 856, 873 (6th Cir. 2012). Thus, the Court in *Ross*, finding that lack of counsel during competency proceedings could constitute "complete deprivation . . . during a critical stage," remanded for a determination of whether the deprivation was "complete" or whether standby counsel had provided "meaningful adversarial testing" in regard to the competency issue. *Id*. Although the Court in *Ross* did not explicitly describe the error as "structural," it cited a law review article on structural error and "joined" the Circuit courts discussed in the article. *Id*. at 874. The *Ross* Court also cited two Sixth Circuit cases that discussed "structural" errors. *Id*. (citing *Van v. Jones*, 475 F.3d 292, 311-12 (6th Cir. 2007); *French v. Jones*, 332 F.3d 430, 438 (6th Cir. 2003)). Relying on *Ross*, the Sixth Circuit later explained that "a competency hearing is a 'critical stage,'" and that complete deprivation of counsel during competency proceedings "can be remedied only by reversal of the judgment without consideration of prejudice." *Martin*, 608 F. App'x at 346.

*Owens v. United States*, 483 F.3d 48, 63-66 (1st Cir. 2007) (reviewing a claim of denial of the right to a public trial in a § 2255 case despite procedural default); *abrogated by Weaver*, 137 S. Ct. at 1907. The Court thus believes that this claim regarding lack of counsel during competency proceedings can proceed despite Heard's failure to raise it on appeal.

To assess Grounds Two and Three, the Court will detail what happened during Heard's 2011-2012 competency proceedings, discuss the relevant case law, summarize the recent evidentiary hearing, and recommend a disposition of Heard's claims.

## A.

On December 27, 2011, Heard's appointed attorney Andrew Stephens filed a motion to assess Heard's mental competency. D.E. 97. The government did not object to the request for a mental evaluation (D.E. 101, 103), and the Court ordered that it be initiated (D.E. 104). Heard was evaluated at the Federal Medical Center in Lexington, Kentucky. On March 21, 2012, Dr. Judith Campbell completed an evaluation report, which was filed in the record on April 11, 2012. D.E. 124. The report diagnosed Heard as having an unspecified personality disorder with antisocial, paranoid, and narcissistic features. *Id.* at 9. But Dr. Campbell found that Heard was competent to stand trial. *Id.* at 11.

Then-Chief Judge Jennifer Coffman conducted a proceeding concerning competency on May 1, 2012. Heard refused to cooperate with his attorney, even to the point of physically threatening him. D.E. 240 at 3-5, 10. The Marshals separated lawyer and client by setting two chairs between them. *Id.* at 3-5.

At the hearing, Mr. Stephens informed the Court that, after he received the psychological report, he "wrote to Mr. Heard" and "advised him as to what the conclusions were." Mr. Stephens did not send a copy of the report to Heard on account of the "case-sensitive information

in it." *Id*. at 3.  Mr. Stephens reported, "I have not had contact with him since.  He has been provided a copy of the report today.  I presume he has read it.  I do not know." *Id*.  Nor had they spoken that day. *Id*. at 5.

Heard told the Court he was not willing to talk to Mr. Stephens other than to discuss the Court's jurisdiction.  D.E. 240 at 6.  Heard asked to waive his right to counsel. *Id*.  Judge Coffman held a recess and directed Heard to "discuss the competency report" with Mr. Stephens and to decide "whether you want a hearing on competency or whether you're going to stipulate that you are competent." *Id*. at 10.

> After the recess, Mr. Stephens reported that Heard
>
> will not speak to me about the merits of what Your Honor is asking.  Obviously, now that a report is being granted, he is entitled to a hearing.  He has not provided me any witnesses that would render any opinions contrary to that.  I don't have the authority to agree that he is competent because he will not discuss that with me.

D.E. 240 at 11.  Judge Coffman's attention then turned to Heard's waiver of his right to counsel. After discussing the matter with Heard, she allowed Heard to represent himself, but kept Mr. Stephens on the case as a legal advisor:

> I am going to allow you to represent yourself.  But, Mr. Stephens, I'm keeping you on as a legal advisor.  You won't be speaking for him, but you're there for him to consult if he needs advice.  And so I want you to step back into the gallery. I want [Heard] to take his seat at counsel table.

*Id*. at 24.  Judge Coffman then turned to the question of whether there would be a competency hearing. *Id*.  Heard, now representing himself, made clear that he believed himself to be competent and waived his right to a competency hearing. *Id*. at 25.

After Heard raised this issue in his § 2255 motion, the undersigned conducted an evidentiary hearing because the record shows that Heard was granted permission to represent himself *before* his competency was addressed by Judge Coffman. *See* D.E. 301.  Under case law

15

that will be discussed below, this error can be harmless if standby counsel conducted an adequate investigation and determined independently that the defendant was competent.  The record on this point was not fully developed, which necessitated the evidentiary hearing.  *Id.*

## B.

The leading case from this Circuit is *United States v. Ross*, 703 F.3d 856 (6th Cir. 2012).  In *Ross*, the government had filed a motion for a competency evaluation.  The defendant was already proceeding *pro se*, and the district court allowed him to represent himself at the competency hearing, with standby counsel present.  *Id.* at 866, 868.

The Court of Appeals held that the District Court "committed error in failing to appoint counsel to represent Ross at the hearing."  *Ross*, 703 F.3d at 869.  This error violated both § 4247(d) and the Sixth Amendment right to counsel.  *Id.* at 869-69.  The appellate court noted that "[t]he threshold for finding that a defendant may be incompetent to stand trial is *lower* than the baseline for competency to represent oneself."  *Id.* at 869 (citing *Indiana v. Edwards,* 554 U.S. 164, 177-78 (2008)).  When a question is raised as to a defendant's competency to stand trial, this triggers the need for mandatory appointment of counsel.  *Id.*  The appellate court cited cases from other Circuits that "support a common-sense viewpoint that a defendant cannot represent himself at his own competency hearing, the purpose of which is to determine whether a defendant understands and can participate in the proceedings in the first place."  *Id.*

> "Logically, the trial court cannot simultaneously question a defendant's mental competence to stand trial and at one and the same time be convinced that the defendant has knowingly and intelligently waived his right to counsel."  *Purnett,* 910 F.2d at 55.  Thus, a trial court should "appoint counsel—whether defendant has attempted to waive it or not—and counsel must serve until the resolution of the competency issue."  *Id.* at 56.

*Id.*  The appellate court noted that, when the defendant's competency is at issue,

16

both the Constitution and governing statutes require that the defendant be represented by counsel whose duty it is to assure that the evidence supporting competency is closely examined. Assurance that the defendant has counsel is especially important where, as here, the steadfast belief of the defendant in his own competency—both to stand trial and to represent himself—is belied by his continuing bizarre behavior.

*Id.* at 870. Furthermore,

Assuming that the defendant is, in fact, incompetent, the lack of a defense attorney to conduct an adequate investigation into the matter could prevent any flaws in the pro-competency position from coming to light. This is particularly true when, as here, the pro se defendant believes and argues that he is competent, leaving no one to examine and challenge the evidence. Accordingly, we hold that the Constitution requires a defendant to be represented by counsel at his own competency hearing, even if he has previously made a knowing and voluntary waiver of counsel.

*Id.* at 871.

However, the Court in *Ross* also recognized that "participation by standby counsel during a competency hearing may be sufficient to overcome a denial of counsel claim." *Ross*, 703 F.3d at 871. The appellate court held that this occurs when standby counsel's participation satisfies the "meaningful adversarial testing" standard of *United States v. Cronic*, 466 U.S. 648, 656-57 (1984). *Id.* at 872. In Ross's case, the appellate court found the record insufficient because it did not contain "clear evidence of meaningful adversarial testing or investigation of the evidence by standby counsel." *Id.*

Surveying the record, the appellate court noted that standby counsel "shared conflicting thoughts on Ross's competence" at the hearing. *Id.* at 872-73. Standby counsel provided documents for the psychiatrist to review. *Id.* at 873. But at the hearing, standby counsel "did not participate to any meaningful degree" and "declined multiple opportunities to argue." *Id.*

His only statements consisted of acknowledging that he received a copy of the report and forwarded it to Ross, agreeing that he had not requested Dr. Nixon's presence, declining to present any evidence with respect to Ross's competence to stand trial, and telling the court that he would not present evidence with respect to

Ross's competence to represent himself but would instead "defer to Dr. Nixon's conclusions."

*Id*. Nevertheless, the appellate court considered it "conceivable" that standby counsel "did satisfy the minimum standard by adequately investigating, undertaking appropriate preparation for the hearing and then making an independent, strategic decision not to contest competency."

*Id*. According to the appellate court, meeting that standard required

> evidence, at a minimum, that standby counsel (1) conducted an adequate investigation into Ross's competency, including reading and analyzing Dr. Nixon's report, and preparing for the hearing and (2) chose not to contest Ross's competency based on his own strategic decision rather than a belief that he simply had no obligation to do so over Ross's instructions.

*Id*. at 874. Thus, the appellate court remanded for an evidentiary hearing. *Id*.

On remand, the district court found that standby counsel had satisfied the *Cronic* test, and Ross appealed. *United States v. Ross*, 619 F. App'x 453 (6th Cir.), *cert. denied*, 136 S. Ct. 520 (2015). At the post-remand hearing, standby counsel testified that he submitted relevant documents to the psychiatrist and "discussed them over the phone with him." *Id*. at 456. He told the psychiatrist that he believed Ross was not only competent, but "very sophisticated." *Id*. After the psychiatrist released his report, standby counsel studied it and discussed it with the psychologist. *Id*. He discussed the report twice with Ross before the hearing. *Id*. Standby counsel testified that he, Ross, and the psychiatrist all agreed Ross was competent, and that he "had nothing to add" at the competency hearing. *Id*.

The appellate court held that standby counsel had no duty to argue for incompetency "simply for the sake of playing devil's advocate and airing that perspective in court." *Ross*, 619 F. App'x at 456. Thus, Ross received adequate representation because standby counsel "adequately consider[ed] Ross's competency on his own," cooperated with the psychiatrist, analyzed the report, and prepared for the hearing. *Id*. The appellate court further found that

18

standby counsel's "decision not to contest the report was based on his agreement with it, rather than a belief that he simply had no obligation to do so." *Id*.

The Sixth Circuit returned to this issue in the case of Francisco Martin, in which the Court granted a new trial. *United States v. Martin*, 608 F. App'x 340, 341 (6th Cir. 2015). The Court found that no remand was necessary because the record was conclusive that standby counsel did not meet the *Cronic* standard. *Id*. at 344. Nothing in the record evidenced "that Martin's standby counsel ever expressed any position on his client's competence; nor does the record indicate that standby counsel ever reviewed any documents related to Martin's competency, including the mental health evaluation." *Id*. at 345. All the record showed was that the psychiatric examiner consulted standby counsel. *Id*. Further, the magistrate judge's instructions to standby counsel "effectively barred her from presenting any conclusions she may have drawn from this investigation, because those instructions foreclosed any action by standby counsel on Martin's behalf beyond answering Martin's legal questions and filing pleadings he drafted." *Id*. "[T]he judge directed his questions to Martin alone." *Id*.

Another case that follows *Ross* is *United States v. Amir*, 644 F. App'x 398 (6th Cir. 2016). In that case, the government had moved for a competency examination. Amir, representing himself, asserted at the ensuing hearing that he was competent, as the psychologist's report found. *Id*. at 399. As in *Ross*, the case was remanded for a hearing on standby counsel's performance. On remand, standby counsel testified that

> he met with Amir several times before his competency hearing; that he communicated to Amir that he did not believe Amir's jurisdictional defense would succeed; that he nonetheless believed Amir to be competent because he could rationally and logically discuss his case; that he discussed with Amir the process involved in a competency evaluation; that he met with Dr. Brannen to discuss the findings in Dr. Brannen's report; that he agreed with the report's findings; and that he delivered the report to Amir, discussed its conclusions with Amir, and encouraged Amir to stipulate to it.

*Id.* at 399-400. Standby counsel also testified "that he made a strategic decision not to challenge the psychological evaluation report, or cross-examine Dr. Brannen because he agreed with the report and because his own independent assessment was that Amir was competent." *Id.* at 400. Finding this case "very similar" to *Ross*, the appellate court affirmed Amir's conviction. *Id.* at 401-02.

## C.

Regarding Heard's motion, this Court held an evidentiary hearing because the record at the time was similar to the pre-remand record in *Ross*. D.E. 301. Particularly concerning was Mr. Stephens's statement at the competency hearing, "I don't have the authority to agree that [Heard] is competent because he will not discuss that with me." D.E. 240 at 11. This statement potentially implicated the last component of the *Ross* standard, which requires (1) evidence that standby counsel conducted an adequate investigation into the defendant's competency, "including reading and analyzing [the] report, and preparing for the hearing" and (2) evidence that standby counsel chose not to contest the defendant's competency "based on his own strategic decision rather than a belief that he simply had no obligation to do so over [the defendant]'s instructions." *Ross*, 703 F.3d at 874.

Additionally, the fact that the trial judge told Mr. Stephens that "he won't be speaking for" Mr. Heard (D.E. 240 at 24) resembled the important factor in *Martin* wherein the magistrate judge's instructions "effectively barred" standby counsel from presenting her own conclusions at the evidentiary hearing. *Martin*, 608 F. App'x at 345.

However, having conducted the hearing, the record in this case now aligns with the post-remand record in *Ross* and *Amir*. As explained below, the record now supports a finding that Mr. Stephens's representation met the *Cronic* standard of meaningful adversarial testing in

regard to Heard's competency.  Mr. Stephens conducted a more than adequate investigation into Heard's competency, relayed all of his knowledge on the subject to the examiner, and came to his own conclusion that the report was correct.  It is also obvious that the only reason Mr. Stephens did not discuss the report with Heard was that Heard refused to cooperate.

### D.

At the evidentiary hearing, Mr. Stephens explained that he filed the motion for a competency examination in 2012 because of a particular incident in a holdover cell in Lexington. D.E. 331 at 10-12; D.E. 97.  This was "absolutely the triggering [event]."  D.E. 331 at 58.  "I don't think I ever really considered the competency issue seriously until I saw what I saw in the holdover at Courtroom A."  *Id*. at 53.  On that day, Heard seemed to be in "mental distress."  *Id*. Mr. Stephens agreed that Heard's behavior in the holdover cell was the entire basis for the motion.  *Id*. at 58.

Mr. Stephens testified that he was "intimately" familiar with the report prior to the May 1, 2012 proceeding.  D.E. 331 at 13-14.  He reviewed it "thoroughly" and in "critical detail."  *Id*. at 22, 35.  He said he had twice discussed Heard's issues with Dr. Campell before the report was completed.  *Id*. at 14.  When asked by the undersigned whether he had relayed to Dr. Campbell every concern that caused him to file the competency motion, Mr. Stephens responded that he had.  *Id*. at 61.

Mr. Stephens testified that the report's findings "did not surprise [him] in the least."  D.E. 331 at 14.  The report "found no issue of competency whatsoever."  *Id*.  However, Mr. Stephens was not able to have "any actual or meaningful interaction with Mr. Heard about the report" after it was issued because Heard refused to communicate with him.  *Id*. at 14-15.

The record of the competency proceeding shows Mr. Stephens did not send Heard a copy of the report as soon as it was available. He told Judge Coffman, "after I got the report, I wrote to Mr. Heard and did not send the report to him because I thought there was some case-sensitive information in it." D.E. 240 at 3. At the recent evidentiary hearing, however, Mr. Stephens initially believed he had sent a copy of the report to Heard in jail prior to the competency proceeding. D.E. 331 at 17-18, 37. The undersigned reminded Mr. Stephens of what he told Judge Coffman in 2012, and this refreshed Mr. Stephens's recollection. *Id*. at 57-58. Mr. Stephens also testified that he mailed a summary of the report to Mr. Heard, but he did not have a copy of the transmittal letter. *Id*. at 15, 35-36, 57.

Why was Mr. Stephens not surprised that the report found Heard competent? Mr. Stephens explained that, when he first met Heard, Heard was "bright," "articulate," and "pretty savvy" regarding his case. D.E. 331 at 19. "When I first met Mr. Heard," he said, "there was absolutely no question in my mind that he was competent." *Id*. at 33. Heard "knew exactly what he was doing" and was "very insistent on being very active in his defense." *Id*. Mr. Stephens had met "several times" with Heard because the discovery was "voluminous." *Id*. at 50.

Mr. Stephens testified that he had no independent evidence to refute the report's finding that Heard was competent. D.E. 331 at 19. The findings "were just about as consistent as what I would have presumed them to be." *Id*. at 20. The report "was consistent with [his] interactions with Mr. Heard." *Id*. at 22. He said "the report basically came back as I would have forecast it to come back." *Id*. at 37. He was "confident" that it was correct. *Id*. at 44. He had no reason to challenge Heard's stipulation to his competency. *Id*. at 56.

Mr. Stephens testified, "I didn't have available to me any evidence of any sort or form that would have contradicted Dr. Campbell's report." D.E. 331 at 25. He had no grounds on

which to challenge the report. *Id.* at 36. He had no grounds to ask for additional witnesses. *Id.* at 37. When asked if he made a "strategic decision" regarding the report, Mr. Stephens said he did "[t]entatively," but would have wanted Heard's input before making a final decision. *Id.* Mr. Stephens also testified that nothing that happened after the issuance of the report caused him to doubt Heard's competency. *Id.* at 43.

Additionally, Mr. Stephens explained his extensive experience with forensic evaluations of competency and criminal responsibility. D.E. 331 at 21. A former magistrate judge had appointed him to work on 50 to 75 such matters in the past. *Id.* Or it may have been "75 to 100 over about a ten-year period." *Id.* at 31. Mr. Stephens became "very, very familiar with the mechanics of how [competency and criminal responsibility evaluations work]." *Id.* at 21. He had reviewed competency reports "[m]any times." *Id.* at 29. This includes "many" reports by Dr. Campbell. *Id.* at 35.

But what about Mr. Stephens's statement at the May 1, 2012 hearing that he lacked the "authority to agree that [Heard] is competent?" D.E. 240 at 11. Mr. Stephens explained that he believed Heard had not given him the right to agree that he was competent. D.E. 331 at 20. He said, "I don't think it's appropriate, without the client's input, to do anything like that." *Id.* This was because Heard would not speak with him at all at that point. *Id.* at 21.

Comparing this case to the Sixth Circuit's decisions in *Ross*, *Martin*, and *Amir* reveals that standby counsel satisfied the *Cronic* "meaningful adversarial testing" standard. Mr. Stephens conducted an adequate investigation and made an independent judgment that the report was correct. Like standby counsel in *Ross*, Mr. Stephens discussed his client's competency over the phone with the mental examiner during the evaluation (in this case, twice, D.E. 331 at 14) and relayed all of his concerns to the examiner (D.E. 331 at 60-62). *United States v. Ross*, 619 F.

App'x 453, 456 (6th Cir. 2015). Next, he prepared for the hearing. Mr. Stephens studied the report, agreed with it, and, like counsel in *Ross*, had nothing to add or contradict the report. *Id*. Like Ross, Heard received adequate representation because standby counsel "adequately consider[ed the defendant]'s competency on his own," cooperated with the psychiatrist, analyzed the report, and prepared for the hearing. *Id*. Finally, as Mr. Stephens's hearing testimony established, his "decision not to contest the report was based on his agreement with it," rather than a bare belief that he simply had no obligation to make an independent assessment. *Id*. And, like the similar case of *Amir*, counsel here "agreed with the report" and made "his own independent assessment [that the defendant] was competent." *United States v. Amir*, 644 F. App'x 398, 400 (6th Cir. 2016). As with Amir, "neither the defendant, nor the court-appointed psychologist, nor the standby counsel doubt[ed] the defendant's competence[.]" *Id*. at 402. Thus, Heard's statutory and constitutional rights to representation at the proceeding were not violated.[4]

The facts developed at the evidentiary hearing also show that Mr. Stephens did not render ineffective assistance during the competency proceedings. Mr. Stephens was clearly well-prepared for the competency proceedings (to the extent that he could prepare without Heard's cooperation), and was unusually well-versed in competency matters. Heard has shown no deficient performance, and any prejudice he suffered while the competency determination was pending resulted solely from his refusal to speak with his attorney. Thus, to the extent that Heard challenges Mr. Stephens's performance in relation to competency proceedings prior to Mr. Stephens's appointment as standby counsel, his claim fails. If Heard is challenging Mr. Stephens's performance *as standby counsel*, such a claim is foreclosed by Heard's decision to

---

[4] Heard relies on *United States v. Meeks*, 987 F.2d 575 (9th Cir. 1993), as analogous and persuasive authority. D.E. 73-1 at 60. But *Meeks* concerned a finding that the defendant had impliedly waived his right to counsel through his conduct. *Meeks*, 987 F.2d at 578-79. Here, Heard explicitly waived his right to counsel; *Meeks* is distinguishable.

represent himself.  A claim of ineffective assistance of standby counsel "necessarily fails" because a decision to exercise the right to self-representation waives the right to representation by counsel.  *Wilson v. Parker*, 515 F.3d 682, 696 (6th Cir. 2008), *as amended on denial of reh'g and reh'g en banc* (Feb. 25, 2009).  Grounds Two and Three should be denied.

## V.  Ground Four-A

Heard argues in Ground Four-A that his appellate counsel was ineffective for failing to argue that the evidence at trial was insufficient to convict on Count One, conspiracy to distribute five kilograms or more of a mixture or substance contianing cocaine.  D.E. 273-1 at 63.  He asserts the jury could not have properly found that a conspiracy existed or that the conspiracy involved five kilograms or more of a mixture or substance containing cocaine.  *Id*. at 63, 66-67.  The total amount of drugs seized was "well under 1 kilogram," he argues, and although codefendants testified as to other amounts, "their numbers varied greatly, and were not specific in nature."  *Id*. at 63.  He also argues that his relationship with his cocaine supplier was a buyer/seller or "consignment" arrangement, and that the evidence did not support a conspiracy. *Id*. at 66-67.

Claims of ineffective assistance of appellate counsel ("IAAC") are subject to the same standards that govern ineffective assistance of trial counsel ("IATC"), as described in *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  Courts presume that appellate counsel provided reasonable professional assistance.  *Hutton v. Mitchell*, 839 F.3d 486, 501 (6th Cir. 2016). Appellate counsel does not have to "raise every possible issue in order to render constitutionally effective assistance."  *Id*.  "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  *Smith*, 528 U.S. at 288.  IAAC is "difficult" to demonstrate.

*Id*. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id*. (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Thus, to demonstrate deficient performance, Heard must show that the issues he raises are "clearly stronger" than the ones his appellate counsel raised. *Hutton*, 839 F.3d at 501; *Bourne v. Curtin*, 666 F.3d 411, 414 (6th Cir. 2012); *Hoffner v. Bradshaw*, 622 F.3d 487, 505-06 (6th Cir. 2010).

The standard for constitutional insufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This Court cannot "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Johnson v. Mitchell*, 585 F.3d 923, 931 (6th Cir. 2009).

In light of these standards, the operative question is whether the evidence at trial supporting the existence of the conspiracy and that it involved five kilograms of cocaine was so insufficient that such insufficiency was clearly stronger than the issues appellate counsel raised on appeal. The arguments raised on appeal concerned Heard's competency and his decision to represent himself at trial. *United States v. Heard*, 762 F.3d 538, 539 (6th Cir. 2014).

Heard summarizes the relevant trial evidence in his memorandum. D.E. 273-1 at 66. He states that "the government star witness" was Victor Hernandez, who testified that Manuel Escalera sold him several multiple-kilogram quantities of cocaine to sell to Heard—as much as twelve kilograms at a time. *Id*. Heard also states that Special Agent Danielle Barto testified that Hernandez sold Heard over 40 kilograms of cocaine. *Id*. Heard argues that Hernandez's testimony was "very elaborate and questionable" and was "tailored to create a narrative more

26

favorable to the government." *Id.* Heard essentially asks the Court to reevaluate the credibility of these witnesses, but that is precisely what the Court cannot do when reviewing the sufficiency of the evidence. *United States v. Warman*, 578 F.3d 320, 332 (6th Cir. 2009). Similarly, his arguments that he was a buyer, not a co-conspirator, invite the Court to reweigh the evidence. *See id.*

Heard cannot establish that the evidence was insufficient without the Court impermissibly reweighing the evidence or reevaluating the credibility of witnesses. Because his insufficiency-of-the-evidence claim is plainly meritless, it cannot be "clearly stronger" than the issues appellate counsel raised on appeal. He cannot establish IAAC under *Hutton*, and Ground Four-A should be denied.

## VI. Ground Four-B

Interwoven with Ground Four-A, Heard challenges the validity of the indictment. D.E. 273-1 at 64-65. Because this argument is nestled within Ground Four-A, which is an IAAC claim, Heard appears to argue that his appellate counsel was ineffective for failing to raise this issue on appeal. Heard also appears to argue in the midst of Ground Five that his trial counsel should have gotten the indictment dismissed.[5] D.E. 273-1 at 73.

To show prejudice on his IATC claim, Heard must show that any attack on the indictment for misconduct before the grand jury would have had merit. And, to prove his IAAC claim, Heard must show that this argument was "clearly stronger" than the arguments Heard's appellate counsel raised on appeal. *Hutton v. Mitchell*, 839 F.3d 486, 501 (6th Cir. 2016).

---

[5] Heard filed two *pro se* motions to dismiss the indictment. D.E. 40, 131. But these motions do not involve alleged misconduct before the grand jury. And neither of his attorneys moved to dismiss. During the pretrial conference on January 7, 2013, Heard orally moved again to dismiss the indictment. D.E. 228 at 39. But this motion also does not appear to be based on perjury or other prosecutorial misconduct before the grand jury.

According to Heard, Agent Barto of the IRS, who testified before the grand jury in conjunction with each of Heard's three indictments, "actively misled the grand jury or engaged in fundamentally unfair tactics in her presentation, [and] knowingly failed to inform the grand jury of other substantial evidence negating guilt."  D.E. 273-1 at 73.  Heard claims that Agent Barto's testimony "consisted of hearsay, conclusions and characterizations."  *Id*. at 64.  He also questions whether the grand jury knew it could subpoena witnesses.  *Id*.  Although he no longer possesses the transcripts,[6] Heard states that he "has seen the grand jury testimony with his own eyes" and recalls that "Agent Barto clearly told the grand jury that Heard is already indicted on Count 1."  *Id*.; *see also id*. at 74.  He argues that the grand jury lacked probable cause to indict. *Id*. at 64.  But he also states he "does not know for certain if the government presented erroneous information to the grand jury."  *Id*.  Heard appears to argue that his trial and appellate counsel should have "contest[ed] and attack[ed] the IRS case agent's testimony because she presented testimony of hearsay and case summaries to the grand jury herself."  *Id*. at 73.

Regarding his recollection that "Agent Barto clearly told the grand jury that Heard is already indicted on Count 1," Heard does not make clear whether this statement by Agent Barto was made in connection to the first, second, or third indictment.  D.E. 273-1 at 64, 74.  The indictment in Heard's case was superseded twice.  D.E. 13, 57.  Heard acknowledges that Agent Barto testified at each of those three grand jury proceedings, on June 2, July 3, and November 3, 2011.  D.E. 273-1 at 64.  Clearly, the statement that Heard was already indicted on Count One would be accurate and proper if it was made after the original indictment but before the first or second superseding indictments.  And all three indictments contain, as the first count, a charge of conspiracy to distribute five kilograms or more of cocaine between September 2008 and May

---

[6] Heard has attempted to obtain the grand jury transcripts several times, but his requests have been denied for failure to demonstrate sufficient particularized need.  D.E. 262, 268, 278.

2011, in violation of 21 U.S.C. § 846. D.E. 1, 13, 57. Because Heard never clearly alleges that Agent Barto made the statement prior to the original indictment, the Court has no basis to find that the statement was improper at all.

Additionally, it is common and not improper for law enforcement officers to testify before a grand jury without accompanying witnesses, and to relay hearsay information and their conclusions. *Costello v. United States*, 350 U.S. 359, 363 (1956); *United States v. Powell*, 823 F.2d 996, 1000 (6th Cir. 1987); *United States v. Markey*, 693 F.2d 594, 596 (6th Cir. 1982); *United States v. Short*, 671 F.2d 178, 181-82 (6th Cir. 1982). A grand jury meeting is not a criminal trial, and the rules of evidence do not apply. *Id.* "An indictment based on incompetent, inadequate or hearsay evidence will stand;" and "[t]he law in this circuit is that 'only on a showing of demonstrated and long-standing prosecutorial misconduct' will an indictment be dismissed." *United States v. Lamoureux*, 711 F.2d 745, 747 (6th Cir. 1983) (citations omitted).

Perhaps most importantly, any defect in an indictment generated by alleged perjured testimony was cured by the petit jury's verdict of guilt. *United States v. Combs*, 369 F.3d 925, 936 (6th Cir. 2004); *United States v. Cobleigh*, 75 F.3d 242, 251 (6th Cir. 1996). Grand jury errors caused by alleged prosecutorial misconduct "are *per se* harmless where the defendant is subsequently convicted by the petit jury." *United States v. Brown*, 332 F.3d 363, 375 (6th Cir. 2003). A trial verdict of guilt beyond a reasonable doubt remedies any defect in regard to a grand jury's finding of probable cause. *United States v. Mechanik*, 475 U.S. 66, 73 (1986). Furthermore, in cases like this, in which the alleged grand jury misconduct is not raised until after the verdict, the issue is forfeited by waiver. *Combs*, 369 F.3d at 936; Fed. R. Crim. P. 12(b)(3)(v).

Heard has not shown that the claim involving the validity of the indictment has merit or is clearly stronger than the claims appellate counsel raised on appeal.  Ground 4-B fails.

## VII.  Ground Five

Ground Five argues that both trial counsel and appellate counsel were ineffective for their "failure to attack and suppress the evidence in all of the government's search and seizure warrants and affidavit[s]."  D.E. 273-1 at 73.  The government argues that Heard cannot complain about a failure to move to suppress evidence because he represented himself.  D.E. 296.  However, pretrial motions were due within eleven days of arraignment.  D.E. 19 at 4. Heard was arraigned on the indictments on June 8, July 15, and November 4, 2011.  D.E. 10, 18, 62.  Heard was represented by counsel until May 1, 2012.  D.E. 127.  Thus, Heard was represented during the period when he was permitted to file pretrial motions.

A § 2255 movant can raise a Fourth Amendment claim indirectly as a claim of ineffective assistance of counsel.  Although "free-standing Fourth Amendment claims cannot be raised in collateral proceedings under either § 2254 or 2255, the merits of a Fourth Amendment claim still must be assessed when a claim of ineffective assistance of counsel is founded on incompetent representation with respect to a Fourth Amendment issue."  *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986)).

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Kimmelman*, 477 U.S. at 375.  As previously discussed, establishing ineffective assistance of appellate counsel requires a showing that the issue in question is clearly stronger than the issues

counsel raised on appeal. Thus, for both IATC and IAAC, Heard must convince the Court that his Fourth Amendment claim has merit.

Heard's substantive argument is that the affidavit supporting the search warrant "was based on the Grand Jury testimony of Special Agent Daniollo Barto." D.E. 273-1 at 74. He argues that "all of this information is a direct result of IRS agent Barto . . . stating to the grand jury that Heard is already indicted on Count 1." *Id.* Agent Barto testified before the first grand jury on June 2, 2011. D.E. 273-1 at 64. The warrant was executed on June 7, 2011. D.E. 229 at 20, 23, 87. Then the indictment was superseded twice. D.E. 13, 57.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." U.S. Const., amend. IV. Probable cause to issue a search warrant exists where "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The Court must "look only to the four corners of the affidavit" supporting the warrant to determine whether it was supported by probable cause. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (citing *United States v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003)). This Court, in reviewing a previously-issued warrant, must not engage in line-by-line scrutiny of the affidavit. *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004) (citing *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001)). Rather, "[t]he affidavit should be reviewed in a commonsense . . . manner, and the court should consider whether the totality of the circumstances supports a finding of probable cause." *Id.* (citing *Greene*, 250 F.3d at 479). The warrant will be upheld unless the issuing judge lacked "'a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'" *Id.* (quoting *United States v. Davidson*, 936 F.2d

856, 859 (6th Cir. 1991)). The issuing judge's "determination of probable cause is afforded great deference, and that determination should be reversed only if the [judge] arbitrarily exercised his discretion." *Id.* (citing *Greene*, 250 F.3d at 479).

The Court has obtained the affidavit by Agent Barto. Early in the affidavit, Agent Barto states, "I am aware that on June 2, 2011, a sealed indictment was returned against [Heard, which] included drug-trafficking and money-laundering charges."[7] So Heard is correct that the affidavit is, at least in part, "based on" Agent Barto's grand jury testimony. D.E. 273-1 at 74. At trial, a prosecutor told the Court that Agent Barto was the only witness who testified before the grand jury that issued the indictments. D.E. 232 at 100. But there is nothing unusual, untoward, or even unexpected about Agent Barto informing the Court in her search-warrant affidavit that Heard had already been indicted. Heard provides no coherent theory as to how the affidavit failed to establish probable cause to support the search. He states that the information in the affidavit was "extremely stale and unreliable," but does not explain how or why this is so. D.E. 273-1 at 73. The Court is left with no basis upon which to find ineffective assistance of trial or appellate counsel in respect to the validity of the search warrant. Ground Five therefore fails.[8]

## VIII. Conclusion

Based on the foregoing, the undersigned **RECOMMENDS** that Heard's 28 U.S.C. § 2255 motion (D.E. 273) be **DENIED.**

**IT IS ORDERED THAT** the application for a sealed warrant and supporting affidavit in case number 5:11-MJ-5060-REW **BE FILED** in the record in this case. The Court notes that Judge Wier unsealed these materials by order dated October 4, 2011.

---

[7] To ensure a complete and accurate record, the Court orders below that this affidavit be filed in the record of this case.

[8] Pages 75 and 76 of Heard's memo contain a string of case citations and summaries without any context as to whether or how Heard believes they might apply to his case. D.E. 273-1 at 75-76. The Court does not interpret these citations as raising claims besides those already discussed.

The undersigned further **RECOMMENDS** that no Certificate of Appealability issue. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *See also* Rule 11 of the Rules Governing Section 2255 proceedings. This standard is met if the defendant can show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). The Court has considered the issuance of a Certificate of Appealability as to each of Heard's claims. No reasonable jurist would find the assessments on the merits above to be wrong or debatable; thus, no Certificate of Appealability should issue. As to Ground Three, the undersigned believes that reasonable jurists could not disagree as to Mr. Stephens's handling of the competency issues in light of *Ross*, *Martin*, and *Amir*. Mr. Stephens's testimony is undisputed, and the facts closely align with those of *Ross* (on remand) and *Amir*. Mr. Stephens plainly did all that he could to reasonably investigate Heard's competency. He was left with no basis whatsoever to challenge the examiner's conclusion that Heard was competent, and strategically chose not to assert any challenge. The uncontested facts establish that meaningful adversarial testing took place.

When a claim (such as Ground One here) is dismissed on procedural grounds, a Certificate may only issue if the movant can show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, Ground One is clearly foreclosed by the fact that the Court of Appeals unambiguously held that Heard made a voluntary, knowing, and

intelligent waiver of the right to counsel. *United States v. Heard*, 762 F.3d 538, 543 (6th Cir. 2014). That this ground is procedurally barred is not debatable.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 20th day of September, 2017.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge